73 P.3d 46

**Anna HAC, Plaintiff–Appellant,**

v.

**UNIVERSITY OF HAWAIʻI; Paul Yuen; Shu Lin; Bharat Kinariwala; N. Thomas Gaarder; James Holm–Kennedy; Frank Koide; Anthony Kuh; David Yun and Kazutoshi Najita, Defendant–Appellees.**

No. 22357.

Supreme Court of Hawaiʻi.

July 17, 2003.

---

Carl H. Osaki, Honolulu, on the briefs, for plaintiff-appellant.

Kathleen N.A. Watanabe and Sarah R. Hirakami, Deputy Attorneys General, State of Hawai'i, on the briefs, for defendants-appellees.

ACOBA, J. and Circuit Judge HIFO, Assigned by Reason of Vacancy, Joining in Parts I–V, VII–VIII and Concurring Separately as to Part VI; With LEVINSON, J., Concurring Separately as to parts IV and V and Joining In Parts I–III and VI–VIII; and MOON, C.J., Concurring in Part and Dissenting in Part, joined by NAKAYAMA, J.

Opinion of the Court by ACOBA, J. as to Parts I, II, III, VII, and VIII and Announcing the Judgment of the Court as to Parts IV, V, and VI.

We hold that the circuit court of the first circuit (the court)[1] did not abuse its discretion in (1) denying a motion to compel discovery by Plaintiff–Appellant Anna Hac (Plaintiff) without prejudice and providing her an opportunity to tailor her discovery request or re-file her motion, and (2) granting the motion in limine of Defendants–Appellees University of Hawai'i, Paul Yuen, Shu Lin, Bharat Kinariwala, N. Thomas Gaarder, James Holm–Kennedy, Frank Koide, Anthony Kuh, David Yun, and Kazutoshi Najita (collectively Defendants) to exclude evidence regarding the performance of the persons who reviewed Plaintiff's promotion application.

But we hold that the court erred in directing a verdict as to Plaintiff's claim of intentional infliction of emotional distress. However, the court's error was harmless, inasmuch as the jury expressly found for the Defendants regarding Plaintiff's other claims, all of which turned on formulations entailing thresholds less stringent than the "outrageous conduct" standard requisite to an intentional infliction of emotional distress claim. In addition, we clarify that the elements of an action for intentional infliction of emotional distress are 1) that the conduct allegedly causing the harm was intentional or reckless, 2) that the conduct was outrageous, and 3) that the conduct caused 4) extreme emotional distress to another. Accordingly, we affirm the March 2, 1999 final judgment in favor of Defendants and against Plaintiff.

## I.

On August 1, 1991, Plaintiff was hired as an associate professor in a tenure-track position in the Department of Electrical Engineering (Department) in the College of Engineering (College) at the University of Hawai'i (University). In October 1993, Plaintiff applied for and was granted tenure effective July 1, 1994.

In October 1994, Plaintiff filed an application "for promotion from the rank of associate professor to full professor." In reviewing an application for promotion, a Department personnel committee evaluates a candidate's application according to the Department's "Procedures and Criteria for Promotion"[2] and writes a recommendation

---

1. The Honorable Steven M. Nakashima presided over the trial herein.

2. According to the Department's "Procedures and Criteria for Promotion," the personnel committee applies the following standard in reviewing a candidate's application for promotion.

> Each candidate will be evaluated in *teaching, research, and service with a rating scale of poor, fair, adequate, good, or excellent.* ... *A positive recommendation for promotion to professor re-*

*quires an "excellent" rating in teaching or research, and "good" in the two remaining areas.*
. . . .
Each candidate will be evaluated based upon his/her accomplishments in the following areas:
1. *Teaching.* Each candidate's teaching and accomplishments are evaluated based on his [or her] teaching effectiveness, course and laboratory developments. *The evaluation of teaching effectiveness is based on*

of its findings to the Department Chairperson. The Department Chairperson then reviews the personnel committee's recommendation and issues a decision on the application. Although not clarified in the record, it appears that the Dean of the College may review the Department's recommendations and if the candidate disagrees with the Department's and College's determination, he or she may appeal to the University's Tenure and Promotion Review Committee (review committee) for review of the application and the Department's and College's decisions. From what transpired in the present case, it appears that the review committee may make a final determination, as it may overturn the Department's and College's decisions to reject promotion.

Sometime in November 1994, Plaintiff's application for a full professor position was denied by a personnel committee.[3] At that time, the personnel committee members were Kinariwala, the chairperson, Gaarder, Holm Kennedy, Koide, Kuh, and Yun.[4] Lin was the Chair of the Department from before August 1991 to December 1995.

The personnel committee applied the Department's "Procedures and Criteria for Promotion" in evaluating Plaintiff's application and voted against her promotion on the ground that she, *inter alia,* "ha[d] not met the departmental requirements for promotion at that level." Lin, the Department chair at the time of Plaintiff's application for promotion, and Yuen, the Dean at the time, agreed with the personnel committee's assessment. The review committee also unanimously agreed with the personnel committee's action because, although Plaintiff had published journal articles, she had unfavorable student evaluations, a low score in effec-

tive teaching, and a poor record in obtaining external funding. Thus, according to the personnel committee, Plaintiff did not meet the requirements to obtain full professor status.

In October 1995, Plaintiff submitted a second application for promotion to full professor status. Again, her request for promotion was denied by the personnel committee. Lin, Yuen, and the review committee agreed with this decision.

On November 9, 1995, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), stating that her October 1994 application for promotion was denied in June 1995 and that "[she] believe[d] that [she] ha[d] been discriminated against because of [her] sex, Female[,] and national origin, Polish[,] in violation of Title VII of the Civil Rights Act of 1964[.]" On August 5, 1996, Plaintiff filed a substantially similar charge of discrimination, claiming that her October 1995 promotion application was denied in May 1996 for the aforementioned reasons.

In October 1996, Plaintiff, for the third time, applied for promotion to a full professor. The personnel committee, Lin, and Yuen again objected to the promotion. The review committee, however, recommended promotion.

Plaintiff filed a third charge of discrimination with the EEOC on November 19, 1996. The charge stated, *inter alia,* that: (1) "[o]n October 4, 1996, [she] met with Chairman Najita and requested that [she] be placed on the Department Professional Committees"; (2) "[she wa]s not placed on any committee, even though [she was] professionally qualified to be on every committee"; and (3)

---

*student evaluation of the candidate's lecture organization, his/her teaching attitude and student contact, and on the student's overall rating of the instructor.*

. . . .

2. *Research. The candidate's research accomplishments are evaluated based on his [or her] research activity, significance of his or her research, publication or research work (quality and quantity are both considered) and research grants.*

. . . .

3. *Service.* The candidate's service is evaluated in the following levels: [Department, College, University, State, National, and International.]

(Some emphases in original and some emphases added.)

3. The specific date of this rejection is not denoted in the record.

4. Najita was the Chair of the Department from January 1, 1996. Yuen was the Dean of the College from 1989 to 1995.

"[she] ha[s] been denied the same terms and conditions of employment as [her] colleagues, in retaliation for [her] having filed with the EEOC."

Plaintiff was promoted to full professor in July 1997.

On July 2, 1997, Plaintiff filed a complaint in the court against Defendants. Plaintiff asserted: (1) sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1994) (Title VII);[5] (2) gender, ethnic, and national origin discrimination under Title VII; (3) retaliation under Title VII; (4) unlawful discrimination under Hawai'i Revised Statutes (HRS) chapter 378;[6] (5) deprivation of rights under 42 U.S.C. § 1983 (1996);[7] (6) negligence; (7) defamation; and (8) intentional infliction of emotional distress.

### A.

On November 10, 1998, Plaintiff filed a Motion to Compel Discovery (motion to compel). In her motion to compel, Plaintiff requested all documents relating to: (1) "any performance plan and/or appraisal *for [Defendants]*"; (2) "any evaluation of *any mem-*

ber *of the College of Engineering* by their students"; (3) "any student complaints *about [Defendants]*"; (4) "any student complaints about *any other person who served as a faculty member* of the College of Engineering at any time that [Plaintiff] also so served"; (5) "any application for promotion or tenure *made by [Defendants]*"; (6) "*any application* for promotion or tenure *made from 1987 to the present by any other person* who served as a faculty member of the College of Engineering"; and (7) "*each and every* post-tenure review conducted on a member of [the] College of Engineering[.]"[8] (Emphases added.)

The court heard the motion on December 22, 1998 and on January 12, 1999, issued an order denying the motion on the grounds that the request was not narrowly tailored and that it did not "establish sufficient similarities between herself and the scope and subject matter of the discovery[.]"[9]

### B.

On February 2, 1999, during pre-trial proceedings, Defendants filed a motion in limine to exclude evidence comparing the performance of the persons who had reviewed

**5.** 42 U.S.C § 2000e-2, relating to unlawful employment practices, states in pertinent part as follows:

> It shall be an *unlawful employment practice for an employer—*
> (1) to fail or refuse to hire or to discharge any individual, or otherwise *to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race*, color, religion, *sex, or national origin*[.]
> (Emphases added.)

**6.** HRS § 378–2 (1993 & Supp.1994), relating to unlawful discriminatory employment practices, provides in relevant part the following:

> It shall be an *unlawful discriminatory practice:*
> (1) *Because of race, sex*, sexual orientation, age, religion, color, ancestry, disability, marital status, or arrest and court record:
> (A) *For any employer to* refuse to hire or employ or to bar or discharge from employment, or otherwise *to discriminate against any individual in* compensation or in the *terms, conditions, or privileges of employment*[.]
> (Emphases added.)

**7.** 42 USC § 1983, on a civil action for deprivation of rights, states that

> *[e]very person who*, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, *subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights*, privileges, or immunities secured by the Constitution and laws, *shall be liable to the party injured in an action at law*, suit in equity, or other proper proceeding for redress[.]
> (Emphases added.)

**8.** Defendants note that they did produce documents pertaining to Professor Kuh, who was considered for promotion from associate professor to full professor in the Department during the 1996–97 academic year.

**9.** The court's order stated the following:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiff's motion be and is hereby DENIED WITHOUT PREJUDICE to allow Plaintiff *to tailor the discovery request or re-file her motion with a more complete evidentiary record sufficient to establish sufficient similarities* between herself and the scope and subject matter of the discovery which is in dispute in the motion.
> (Emphasis added.)

Plaintiff's promotion dossiers with the promotion criteria that were applied to Plaintiff (motion to exclude). In the motion to exclude, Defendants asserted that Plaintiff should be prevented from seeking and presenting evidence and testimony "concerning the teaching evaluations, research and public records, and/or extramural funding records of the members of the [Department personnel committee] and Department Chair (who are all tenured and full professors) who evaluated Plaintiff's promotion dossier/files and made negative promotion recommendations[.]"

At a hearing on the motion held on February 5, 1999, Plaintiff argued that the requested information would demonstrate that the professors on the personnel committee themselves did not meet the promotion criteria that was applied to Plaintiff. Defendants, on the other hand, maintained that such evidence as applied to the Department personnel committee members and Department Chairs "[wa]s irrelevant and [would] confuse the issues, . . . [and] waste the court's and jury's time" because the full professors on the personnel committee were admitted under criteria different than those applied to Plaintiff. Defendants maintained the "real issue [was] whether [Defendants] applied the promotion criteria properly to the [P]laintiff[,]" not whether the professors on the committee met the criteria themselves.

The court orally granted Defendants' motion, reasoning that the issue was "whether or not [P]laintiff met [the] criteria to go from associate professor to professor and . . . not whether or not any of the full professors are doing the job of a full professor" and, thus, admission of such evidence would "tend to

confuse the issues." The court also expressed the view that Plaintiff had "a lot of other avenues to show the discrimination." A written order to that effect was issued on March 2, 1999.

## C.

At the close of Plaintiff's case-in-chief on February 16, 1999, Defendants orally moved for directed verdict [10] on several of Plaintiff's claims, including Count VIII relating to intentional infliction of emotional distress.[11] On this claim, Plaintiff's counsel argued that certain incidents created a hostile work environment resulting in emotional distress.

At trial, Plaintiff testified to Lin's alleged sexual advances. *See* discussion *infra*. In addition, Plaintiff alleged that Holm–Kennedy and Gaarder made racial slurs against her. *See* discussion *infra*. On this evidence, Plaintiff asserted that the question of intentional infliction of emotional distress should be decided by the jury because the alleged conduct of "harassment" and "discrimination" were "outrageous and . . . beyond the bounds of decency." Defendants contended that "none of the actions . . . attributed to [Defendants] rose to that level."

After hearing the parties' arguments, the court ruled that a separate cause of action was not "necessary" because the statements and actions involved were "part and parcel of a [HRS § ] 378[–2] claim," and, thus, there was no "basis for a separate emotional distress claim[.]" [12] The court suggested that "[P]laintiff [could] certainly claim the emotional distress as a result of the claims that remain against all of the defendants[.]" [13] In

---

**10.** Pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 50, a directed verdict is now titled "Judgment as a Matter of Law" effective January 1, 2000. As the court and parties utilized the term "directed verdict," we similarly use it herein, although the term is no longer technically correct.

**11.** Plaintiff does not appeal the court's ruling on the other directed verdicts, and these claims are not addressed on appeal. *See* Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7) ("Points not argued may be deemed waived.").

**12.** The court stated in relevant part, on the absence of a need for a separate intentional distress claim, as follows:

Well, my view of it on . . . emotional distress is that, you know, . . . that type of relief is—is really basically part and parcel of a 378 claim. . . . I don't think that there should be a basis for a separate emotional distress because there is no-there's nothing there to—I mean, to have emotional distress from.

**13.** The relevant portions of the court's statements on the alternative means available to Plaintiff on her emotional distress claim are as follows:

The emotional distress, you know, I know that the statute provides that there can be such

addition, the court explained that dismissal of the claim was warranted because having a separate distress claim might lead to jury confusion and double recovery.[14] Finally, the court opined that "there is no—there's nothing there to—I mean, to have the emotional distress from" and that there is no "basis for emotional distress because there's nothing in the labor laws that says people have to be nice to people." The court then dismissed the intentional infliction of emotional distress claim.

The jury was instructed, *inter alia*, that "if [the jury] find[s] in favor of Plaintiff on any of her claims," back pay and compensatory damages may be awarded and "[t]he award of compensatory damages includes compensation for pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life." The jury returned a verdict in favor of Defendants and against Plaintiff on all of her claims, and a judgment was entered on March 2, 1999. Plaintiff filed a notice of appeal on March 16, 1999.

### II.

On appeal, Plaintiff raises three points of error. She contends that the court erred in: (1) denying her November 10, 1998 motion to compel; (2) granting Defendants' February 2, 1999 motion to exclude; and (3) granting Defendants' oral motion on February 16, 1999 to direct a verdict on Plaintiff's claim for emotional distress.

### III.

■ Initially, we briefly observe that Plaintiff's claims are not moot, despite the fact that she was promoted to full professor. Generally,

> a claim. But I really think that to make it clear so that we don't have any confusion on the claim, [P]laintiff can certainly claim the emotional distress as a result of the claims that remain against all of the defendants[.]
>
> . . . .
>
> But as far as having a separate cause of action, I don't think that that is necessary. And that is really more a confusing—potentially confusing the issues than anything else. So I'm going to go ahead and dismiss that because it's really unnecessary. Any emotional

"[t]he duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."

*In re Application of Thomas,* 73 Haw. 223, 226, 832 P.2d 253, 255 (1992) (quoting *Wong v. Board of Regents, Univ. of Hawai'i,* 62 Haw. 391, 395, 616 P.2d 201, 204 (1980)). A case is moot when "events . . . have so affected the relations between the parties that the two conditions for justiciability relevant on appeal—adverse interest and *effective remedy*—have been compromised." *Okada Trucking Co. v. Board of Water Supply,* 99 Hawai'i 191, 195–96, 53 P.3d 799, 803–04 (2002) (citations omitted) (emphasis added); *see also Hodges v. Schlinkert Sports Assocs., Inc.,* 89 F.3d 310, 312 (6th Cir.1996) (cases are moot " 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome' " (quoting *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 396, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980))).

■ In her complaint, Plaintiff requested an "award of general, special, compensatory, statutory, and punitive damages in amounts to be proven at trial" and "[i]njunctive and/or declaratory relief ordering that her promotion to full Professor be deemed retroactive to June of 1995[.]" Inasmuch as Plaintiff's requested remedies can be effectuated and all parties have a legally cognizable interest in the outcome, this case is still "live," and this court has jurisdiction. *See Garcia v. Kaiser·Found. Hosp.,* 90 Hawai'i 425, 437, 978 P.2d 863, 875 (1999) (noting that where there was an available remedy, the claim was

distress could result from any of [the] claims remaining against [ ][D]efendants.

**14.** On this issue, the court stated in pertinent part that

> there's no basis for emotional distress and there could be a basis for confusion, you know, that somehow gave an emotional distress claim award for a separate claim and then gave, you know, general damages for a 378 claim. That's a concern that I have with having a separate emotional distress.

not moot (citing *Kuestner v. Health & Welfare Fund,* 972 F.Supp. 905, 911 (E.D.Pa. 1997))); *see also West v. Department of Transp.,* 206 F.3d 920, 926 n. 4 (9th Cir.2000) ("The central question of all mootness problems is whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief.... [C]ourts must be careful to appraise the full range of remedial opportunities." (Quoting 13A Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction and Related Matters* § 3533.3, at 286 (2d ed.1984))); *Neshaminy Sch. District v. Karla B.,* 1997 WL 137197, *6 (E.D.Pa. 1997) ("In civil litigation, a case is not moot, even if the plaintiff's primary injury is resolved, so long as the plaintiff continues to suffer some harm that a favorable court decision would resolve." (Quoting E. Chemerinsky, *Federal Jurisdiction* 130 (2d ed.1994).)).

### IV.

### A.

■ With respect to her first point of error, Plaintiff contends that the court "erred in denying [her] motion to compel ... [because] such information was crucial to establishing that the excuses proffered by Defendants were mere pretexts [15] to conceal wrongful discrimination." According to Plaintiff, these materials were relevant to refute Defendants' assertion that Plaintiff failed to meet the criteria for promotion and to demonstrate that Defendants discriminated against her. Because Plaintiff maintains that she moved to compel discovery in order to establish illegal discrimination, the only pertinent claims are the gender, ethnic, and national origin discrimination claims

brought under Title VII and HRS chapter 378.[16]

### B.

■ The matters set forth in Plaintiff's discovery requests were discoverable if, as HRCP Rule 26(b) indicates, the matters sought were "relevant to the subject matter involved in the pending action." The rule states, in relevant part as follows:

(b) Discovery Scope and Limits. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(1) In General. *Parties may obtain discovery regarding any matter,* not privileged, which is *relevant to the subject matter involved in the pending action,* whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party[.] ... It is not ground for objection that the information sought will be inadmissible at the trial if the *information sought appears reasonably calculated to lead to the discovery of admissible evidence.*

(Emphases added). In that regard, the HRCP "reflect a basic philosophy that a party to a civil action should be entitled to the disclosure of all relevant information in the possession of another person prior to trial, unless the information is privileged[.]" *Wakabayashi v. Hertz Corp.,* 66 Haw. 265, 275, 660 P.2d 1309, 1315 (1983) (citations omitted). However, "[t]he extent to which discovery is permitted under Rule 26 ... is subject to considerable latitude and [the] discretion [of the trial court]." *Id.* (internal quotation marks and citation omitted). "Thus[,] the exercise of such discretion will

---

15. An employer's reason for adverse employment action is pretextual, when "it is unworthy of belief." *English v. Colorado Dept. of Corrections,* 248 F.3d 1002, 1008 (10th Cir.2001) (citing *McDonnell Douglas v. Green,* 411 U.S. 792, 804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). *See also Kulumani v. Blue Cross Blue Shield Ass'n.,* 224 F.3d 681, 684, 685 (7th Cir.2000) (stating that pretext means "a dishonest explanation" and "deceit used to cover one's tracks"). In Hawai'i, "[a] plaintiff may establish pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's prof-

fered explanation is unworthy of credence.' " *Shoppe v. Gucci Am., Inc.,* 94 Hawai'i 368, 379, 14 P.3d 1049, 1060 (2000) (citations omitted).

16. While the issue could be pertinent to Plaintiff's retaliation claim under Title VII, Plaintiff does not mention the retaliation claim in her opening brief. Thus, we do not consider that claim in determining whether the court erred in denying her motion to compel. *See* HRAP Rule 28(b)(7) ("Points not argued may be deemed waived.").

not be disturbed in the absence of a clear abuse of discretion that results in substantial prejudice to a party." *Id.* Accordingly, the applicable standard of review on a trial court's ruling on a motion to compel discovery, brought pursuant to HRCP Rule 26, is abuse of discretion. *See Acoba v. General Tire, Inc.,* 92 Hawai'i 1, 11, 986 P.2d 288, 298 (1999) (holding "that the circuit court did not abuse its discretion in denying [the plaintiff]'s motion to compel [interrogatories] pursuant to HRCP Rule 26"). "An abuse of discretion occurs when the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Davis v. Wholesale Motors, Inc.,* 86 Hawai'i 405, 418, 949 P.2d 1026, 1039 (App.1998) (quoting *Richardson v. Sport Shinko (Waikiki Corp.),* 76 Hawai'i 494, 504, 880 P.2d 169, 179 (1994)); *see also State v. Sacoco,* 45 Haw. 288, 293, 367 P.2d 11, 13 (1961).

Inasmuch as the language of Federal Rules of Civil Procedure (FRCP) Rule 26(b) and HRCP Rule 26(b) are substantially similar, interpretations of FRCP Rule 26(b) are persuasive. *See Gold v. Harrison,* 88 Hawai'i 94, 105, 962 P.2d 353, 364 (1998), *cert. denied,* 526 U.S. 1018, 119 S.Ct. 1254, 143 L.Ed.2d 351 (1999) ("Where we have patterned a rule of procedure after an equivalent rule within the FRCP, interpretations of the rule by the federal courts are deemed to be highly persuasive in the reasoning of this court." (Internal quotation marks and citations omitted.)). Under FRCP Rule 26(b), "the question of relevancy is to be more loosely construed at the discovery stage than at the trial, where the relevance question for purposes of admissibility is governed by the Federal Rules of Evidence." 8 C. Wright, A. Miller, and R. Marcus, *Federal Practice and Procedure: Civil* § 2008, at 99–100 (1994) (footnotes omitted) [hereinafter, *Federal Practice* ].[17] "To limit an examination to matters relevant to only the precise issues presented by the pleadings would not only be contrary to the express purposes of rule 26, but also might result in a complete failure to afford plaintiff an adequate opportunity to obtain information that would be useful at trial." 8 *Federal Practice, supra,* § 2008, at 102 (footnote omitted).

### C.

Plaintiff's arguments are based on the burden-shifting analysis for a Title VII discrimination claim set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Whereas Plaintiff argues that Defendants intentionally discriminated against her on the basis of gender, ethnicity, or national origin, her claims may be characterized as "individual 'disparate treatment' discrimination[,]" that is, "intentional discrimination against an individual who belongs to a protected class." [18] *Shoppe v. Gucci Am., Inc.,* 94 Hawai'i 368, 377–78, 14 P.3d 1049, 1058–59 (2000). Hence, she must adduce circumstantial evidence of discrimination to establish her discrimination claims by applying the so-called *McDonnell Douglas* burden-shifting analysis.

This court has adopted the *McDonnell Douglas* analysis in HRS § 378-2 discrimination cases. *See Schefke v. Reliable Collection Agency, Ltd.,* 96 Hawai'i 408, 441, 32 P.3d 52, 85 (2001) (adopting a three-prong test for claim and noting that it "is consistent with the *McDonnell Douglas* framework this court has followed in *Shoppe, Sam Teague,* and *Furukawa* "); *see also Shoppe,* 94 Hawai'i at 378–81, 14 P.3d at 1059–62; *Sam Teague, Ltd. v. Hawai'i Civil Rights Comm'n,* 89 Hawai'i 269, 279, 971 P.2d 1104, 1114 (1999); *Furukawa v. Honolulu Zoological Soc'y,* 85 Hawai'i 7, 12–14, 936 P.2d 643,

---

**17.** At trial, Hawai'i Rules of Evidence (HRE) Rule 401 (1993) would apply, and states that " 'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

**18.** Two other theories of discrimination include " 'pattern-or-practice' discrimination," which is "intentional discrimination against a protected class to which the plaintiff belongs[,]" and " 'disparate impact' discrimination," which is "unintentional discrimination based on a neutral employment policy that has a disparate impact on a protected class to which the plaintiff belongs." *Shoppe,* 94 Hawai'i at 377, 14 P.3d at 1058.

648–50 (1997). To prevail under the *McDonnell Douglas* test, a plaintiff must first establish a *prima facie* case of discrimination. *See Shoppe*, 94 Hawai'i at 378–81, 14 P.3d at 1059–62. If the plaintiff establishes the *prima facie* case, an intermediate burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason for the adverse employment action." *Id.* at 378–79, 14 P.3d at 1059–60. If the defendant rebuts the *prima facie* case, the burden reverts to the plaintiff to present evidence demonstrating that the defendant's articulated reasons were pretextual. *See id.* at 379, 14 P.3d at 1060 (citations omitted).

■ But, in order to show pretext by comparison, there must be sufficient similarity between the plaintiff and the matters of discovery sought. Addressing the issue of "similarly situated" evidence, this court in *Furukawa* held that, to establish a *prima facie* case, the claimant "must prove that all of the *relevant aspects* of his [or her] employment situation were similar to those employees with whom he [or she] seeks to compare his [or her] treatment." 85 Hawai'i at 14, 936 P.2d at 650 (citations omitted) (emphasis in original). While it was cautioned that "circumstantial evidence bearing on the ultimate issue should not be automatically excluded by the application of arbitrary rules[,]" *id.* at 15, 936 P.2d at 651, it was concluded that there must be a showing that the "similarly situated employees are those who are subject to the same policies and subordinate to the same decision-maker as the plaintiff[,]" *id.* at 14, 936 P.2d at 650.

Similarly, it is well-settled in other jurisdictions that a plaintiff must demonstrate sufficient similarities in order to prove pretext by comparison. *See Lynn v. Deaconess Med. Center–West Campus*, 160 F.3d 484, 488 (8th Cir.1998) ("To show that employees are similarly situated, a plaintiff need only establish that he or she was treated differently than other employees whose violations were of 'comparable seriousness.'" (Citations omitted.)); *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 985 (10th Cir.1996) ("The fact finder may only infer discrimination if the [p]laintiffs produce evidence that the [d]efendant's proffered explanation is pretextual and unworthy of credence." (Citing *Ingels v. Thiokol Corp.*, 42 F.3d 616, 621–22 (10th Cir.1994).)); *Matthews v. Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 686 N.E.2d 1303, 1310 (1997) (noting that the "plaintiff must identify other employees to whom he [or she] is similarly situated in terms of performance, qualifications and conduct, without such differentiating or mitigating circumstances that would distinguish their situations" (internal quotation marks and citations omitted)); *Swyers v. Romines*, 858 S.W.2d 862, 864 (Mo.Ct.App.1993) (noting that discovery of discrimination "occurring *prior* to the effective date of the claim is relevant in a disparate treatment case ... in establishing a *prima facie* case and to show that the employer's asserted reasons are pretextual" (emphasis in original) (citations omitted)).

■ While we acknowledge that a more liberal standard of relevancy than that set forth in the rules of evidence must be applied at the discovery stage, some of the requested materials were not relevant under the "similarly situated" test. The materials regarding applications for tenure and post-tenure review of Defendants and faculty members were irrelevant because they are not concerned with applications for promotion. Similarly, student evaluations of and complaints against Defendants and faculty members after they became full professors were not relevant to Plaintiff's claim that she was subjected to discrimination in the processing of her application for promotion to that position.

On the other hand, it is evident that some of the requested materials appear relevant to the "subject matter" involved. For example, the materials that concerned the performance, appraisal, student evaluations, student complaints, and applications for promotion of Defendants and the faculty members during the period prior to attaining full professorship may have been relevant if similar to the materials considered by the personnel committee in evaluating Plaintiff's applications.

Nevertheless, under the circumstances, it was not an abuse of discretion for the court to deny the request without prejudice, with the instruction to file a more narrowly-tailored request. Plaintiff should have limited

her motion to compel to individuals who had applied for promotion in the same department during a reasonable time frame proximate to her time of application. *See Swyers,* 858 S.W.2d at 865 (noting that discovery regarding prior employment practices was permissible, but it should be limited to a "reasonable time frame prior to the alleged discriminatory act"). Additionally, she could have directed her request to the applications of professors and faculty who had been subjected to the same evaluation criteria. *See Matthews,* 686 N.E.2d. at 1310–12 (distinguishing between different examples of misconduct and noting that where employees were disciplined under a "different policy[,]" the evidence did not assist in establishing pretext); *Swyers,* 858 S.W.2d. at 865. Instead, Plaintiff requested information regarding *all* faculty members of the College of Engineering.[19]

In light of the fact that the Department had its own selection criteria and that some of the members of the Department were not full professors, we cannot conclude that all requested information was relevant to the subject matter of her case. We observe that Plaintiff had ample opportunity to file a second request for discovery of these materials before the case went to trial. Therefore, we hold that the court did not abuse its discretion in denying the motion to compel without prejudice and providing Plaintiff the opportunity to tailor her discovery requests or re-file her motion.

## V.

## A.

■ Plaintiff's second contention on appeal is that the trial court erred in granting Defendants' motion in limine to exclude evidence and testimony "concerning the teaching evaluations, research and public records, and/or extramural funding records of the members of the [Department personnel committee] and Department Chair (who are all tenured and full professors) who evaluated

Plaintiff's promotion dossier/files and made negative promotion recommendations[.]" " 'The granting or denying of a motion in limine[,]' " *Meyer v. City and County of Honolulu,* 6 Haw.App. 505, 510 n. 8, 729 P.2d 388, 395 n. 8 (1986) (quoting *Lussier v. Mau–Van Dev., Inc.,* 4 Haw.App. 359, 392, 667 P.2d 804, 826 (1983)), is reviewed for abuse of discretion. *See id.*

## B.

■ In granting Defendants' motion to exclude, the court reasoned that "whether ... a full professor is still meeting the criteria of being a full professor w[ould] tend to throw the focus off" the issue of whether Plaintiff met the criteria for promotion. We conclude that the court did not abuse its discretion in granting the motion.

The performance of the full professors on the personnel committee was correctly deemed irrelevant. First, the performance levels of the committee members did not establish the applicable standard or criteria used in evaluating Plaintiff's application for a full professorship. Rather, the documents delineating the criteria used by the personnel committee in reviewing Plaintiff's application were applicable and were delivered to her during discovery and provided as exhibits to the jury. Second, as discussed above, Plaintiff did not tailor her requests to those committee members who were promoted to full professor status during a reasonably prescribed period and under the same criteria applicable to her promotion application. In fact, as indicated, some of the materials regarding the committee members appeared irrelevant to her discrimination and retaliation claims. As mentioned by Defendants' attorney at the hearing on the motion to exclude, the committee members were already full professors when they reviewed Plaintiff's application. In the words of Defendants' attorney, Plaintiff was "going up for promotion" and the committee members were "people [who were] basically promoted."

---

19. *See supra* page 97, 73 P.3d page 51. It is unlikely that information such as student evaluations of every faculty professor in the College was relevant to the application criteria used in the Department. In addition, the request for post-tenure review status appears to be extraneous.

## C.

■ Even were the evidence deemed relevant, it was properly excluded because "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." HRE 403 (1993)

We believe that the evaluation of a full professor's performance for the purposes of tenure review is distinct from that relating to an associate professor who seeks advancement to full professorship. The question of whether the performance of the professors on the personnel committee fulfilled the promotion requirements that were applied to Plaintiff had no direct relationship to whether Plaintiff actually met the applicable criteria for promotion herself. Allowing Plaintiff to introduce evidence of the evaluations for tenure review would have, as the court opined, confused the issues and misled the jury. The jury's focus, as noted by the court, would have shifted away from whether Plaintiff met the criteria for promotion.

In addition, Plaintiff had other means to prove that she met the criteria for promotion; namely, the documents delineating the applicable criteria and her own dossier. With these materials at her disposal, Plaintiff could establish that she satisfied the criteria for promotion by identifying portions of her dossier demonstrating her qualifications for full professor status. Thus, we alternatively conclude that the court did not abuse its discretion in granting Defendants' motion to exclude because the requested evidence would lead to confusion and had a tendency to cause undue delay and to waste the court's and jury's time.

## VI.

## A.

Plaintiff's last argument on appeal is that the court erred in granting Defendants' motion for directed verdict on Plaintiff's claim for intentional infliction of emotional distress. As previously mentioned, this claim related to Plaintiff's contention that a hostile work environment had resulted in an emotional distress. *See supra* page 98, 73 P.3d page 52.

But, in instructing the jury, the court advised it that it might award damages for "pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life[,]" as part of compensatory damages on any claim. *Cf.* Dan B. Dobbs, *The Law of Torts* § 305, at 829 (2000) (noting that under most state and federal antidiscrimination statutes, including Title VII, "some compensation for emotional distress is now recoverable, and in addition some job discrimination—notably sexual harassment—may also warrant a common law outrage claim"); *see, e.g., Smith v. Norwest Fin. Acceptance, Inc.,* 129 F.3d 1408, 1417 (10th Cir.1997) (holding that emotional distress damages may be awarded as a part of compensatory claim arising out of a Title VII claim).

But, the fact that the jury may consider emotional distress damages as part of the compensatory damages accompanying "any of [Plaintiff's] claims," does not necessarily resolve the question of whether separate liability may be established for intentional infliction of emotional distress as an independent tort. *See Calleon v. Miyagi,* 76 Hawai'i 310, 320, 876 P.2d 1278, 1288 (1994) (stating that a claim of intentional infliction of emotional distress is an "independent tort[ ]"); *Restatement (Second) of Torts* § 46 cmt. b, at 72 (1965) [hereinafter, *Restatement*] (noting that intentional infliction of emotional distress has been "fully recognized as a separate and distinct basis of tort liability, without the presence of the elements necessary to any other tort, such as assault, battery, false imprisonment, trespass to land, or the like").

■ Ordinarily, evidence of intentional conduct pleaded as a separate cause of action should be considered by the fact finder as a separate and independent claim. *See Takaki v. Allied Machinery Corp.,* 87 Hawai'i 57, 67, 951 P.2d 507, 517 (App.1998) (holding that "an employee may bring an action against his or her employer for intentional infliction of emotional distress caused by discrimination in violation of HRS §§ 378-2" (citing *Hough*

v. *Pacific Ins. Co.*, 83 Hawai'i 457, 465, 927 P.2d 858, 866 (1996))); *cf. Nelson v. University of Hawai'i*, 97 Hawai'i 376, 394, 38 P.3d 95, 113 (2001) (analyzing both an alleged violation of HRS § 378-2 and an intentional infliction of emotional distress claim separately); *Ross v. Stouffer Hotel Co. (Hawai'i)*, 76 Hawai'i 454, 465, 879 P.2d 1037, 1048 (1994) (addressing both a HRS § 378-2 claim and an intentional infliction of emotional distress claim individually). In such a case, the jury should be instructed as to this cause of action but cautioned that an award made for intentional infliction of emotional distress must not be duplicated in compensatory damages given on any other claim.

## B.

 Nevertheless, the court afforded the jury the opportunity to award damages for emotional distress in Plaintiff's favor in the context of her other claims for relief. *See supra* pages 98, 103, 73 P.3d pages 52, 57. The jury was also instructed that Plaintiff must "prove by a preponderance of the evidence" that "she was subjected to verbal or physical conduct which was sufficiently pervasive or severe as to alter the conditions of her employment or create an abusive working environment[.]" In defining "pervasive or severe," the jury was told that conduct which "unreasonably interfer[ed] with [Plaintiff's] work performance" or created an "intimidating, hostile, or offensive working environment" would be sufficient. The jury answered the question, "Do you find by a preponderance of the evidence that Plaintiff was subjected to a hostile work environment because of her female gender or Polish national origin" in the negative. Inasmuch as the jury did not find that Plaintiff was subjected to a hostile work environment because of gender or racial bias, *a fortiori*, the jury could not have found in Plaintiff's favor on her claim of intentional infliction of emotional distress had it been submitted. Accordingly, the error, if any, in the court's

**20.** This court stated that "three elements must be present: (1) that the act is intentional; (2) that it is unreasonable; and (3) that the actor should recognize it as likely to result in illness." *Fraser*, 39 Haw. at 374-75. The test expressed in *Dunlea* is linearly based on the holding in *Fraser*.

granting of a directed verdict for the reasons it gave was harmless. "No judgment, order or decree shall be reversed, amended or modified for any error or defect unless [this] court is of the opinion that it has injuriously affected the substantial rights of the appellant." HRS § 641-2 (1993). As the jury found that no harassment occurred, the failure to give a separate instruction regarding intentional infliction of emotional distress did not affect Plaintiff's constitutional rights.

## VII.

We observe that the parties cited to our jurisdiction's present formulation of the elements of the tort of intentional infliction of emotional distress as follows: " '(1) that the act allegedly causing the harm was intentional; (2) that the act was unreasonable; and (3) that the actor should have recognized that the act was likely to result in illness.' " *Dunlea v. Dappen*, 83 Hawai'i 28, 38, 924 P.2d 196, 206 (1996) (quoting *Marshall v. University of Hawai'i*, 9 Haw.App. 21, 38, 821 P.2d 937, 947 (1991) (citation omitted)); *see also Takaki*, 87 Hawai'i at 66 n. 13, 951 P.2d at 516 n. 13; *Lee v. Aiu*, 85 Hawai'i 19, 34, 936 P.2d 655, 670 (1997). These elements were established by this court fifty years ago in *Fraser v. Morrison*, 39 Haw. 370 (1952), based upon the Restatement (First) of Torts, section 312 (1934).[20] Recovery could only occur if there was an "illness *or other bodily harm*[.]"

However, as the law has evolved, the American Law Institute, in the Restatement (Second) of Torts, reformulated the elements of the tort as follows:

> One who by *extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another* is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

*See Marshall*, 9 Haw.App. at 38, 821 P.2d at 947 (quoting *Wong v. Panis*, 7 Haw.App. 414, 421, 772 P.2d 695, 696-97 (1989) (quoting *Ailetcher v. Beneficial Fin. Co. of Hawai'i*, 2 Haw.App. 301, 304, 632 P.2d 1071, 1075 (1981) (quoting *Fraser* ))).

*Restatement, supra*, § 46, at 71–72 (emphasis added). Under the second Restatement, the likelihood of illness is no longer a necessary element of the tort. Rather, severe emotional distress is the prohibited result. Severe emotional distress is defined as "mental suffering, mental anguish, mental or nervous shock [and] ... includ[ing] all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea." [21] *Restatement, supra*, § 46 at 77–78. "The intensity and the duration of the distress are factors to considered in determining its severity." *Restatement, supra*, § 46 at 77–78. Hence, in accordance with the present Restatement, bodily injury, while compensable, is not necessary to establish severe emotional distress.

> The rule stated is not, however, limited, to cases where there has been bodily harm; and if the conduct is sufficiently extreme and outrageous there may be liability for the emotional distress alone, without such harm. In such cases the courts may perhaps tend to look for more in the way of outrage as a guarantee that the claim is genuine; but if the enormity of the outrage carries conviction that there has in fact been severe emotional distress, bodily harm is not required.

*Restatement, supra*, § 46 cmt. k, at 78; *see also* Dobbs, *The Law of Torts, supra*, § 306, at 832 ("Although severe distress must be demonstrated, and must be caused in fact by the defendant's tortious conduct, medical testimony is not ordinarily required to demonstrate either the severity of the distress or its cause.").

Also, in line with the Restatement's formulation, the actor's intentional conduct must have actually caused the plaintiff to suffer severe emotional distress.[22] *See Restatement, supra*, § 46 cmt. j, at 77 ("The rule stated in this Section applies only where the emotional distress has in fact resulted, and where it is severe."); *Tibke v. McDougall*, 479 N.W.2d 898, 907 (S.D.1992) (stating that the tort of intentional infliction of emotional distress "requires conduct exceeding all bounds usually tolerated by decent society and which is of a nature especially calculated to cause, and does cause, mental distress of a very serious kind").

■ Intentional infliction of emotional distress is an injury recognized by the Restatement as independently giving rise to liability.

> Because of the fear of fictitious or trivial claims, distrust of the proof offered, and the difficulty of setting up any satisfactory boundaries to liability, the law has been slow to afford independent protection to the interest in freedom from emotional distress standing alone. It is only within recent years that the rule stated in this Section has been fully recognized as a separate and distinct basis of tort liability[.]

*Restatement, supra*, § 46 cmt. b, at 72. In light of the foregoing, we adopt the approach set forth in the Restatement (Second) of Torts. In light of the substantial change in the law, we hold that the elements of the tort of intentional infliction of emotional distress are 1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4)

21. The Restatement definition of "severe emotional distress" must be distinguished from that of "serious mental distress" as used in *Rodrigues v. State*, 52 Haw. 156, 472 P.2d 509 (1970), for the negligent infliction of emotional distress. Therein, serious mental distress was defined as "where a reasonable [person], normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Id.* at 173, 472 P.2d at 520.

22. One commentator observes that most jurisdictions require some evidence that severe emotional distress has occurred:

> Neither the Restatement nor most of the cases require proof of physical symptoms for all cases, much less proof of physical harm or impact. Some courts, however, have carried over the requirement of physical manifestation or symptoms from the law of negligent infliction of distress. *And all courts require some kind of evidence of severe distress.* When the defendant's conduct is extreme enough, the fact tends to prove sever distress. When the defendant's conduct is not so extreme, the plaintiff may need proportionately stronger evidence that her distress is severe. ·By itself, testimony that the plaintiff cried and was upset is simply insufficient.

Dobbs, *The Law of Torts, supra*, § 306, at 832–33 (emphasis added).

extreme emotional distress to another. *See also May v. City of Durham,* 136 N.C.App. 578, 525 S.E.2d 223, 230 (2000) ("A claim for intentional infliction of emotional distress requires the existence of three elements: (1) extreme and outrageous conduct; (2) which is intended to cause and does cause (3) severe emotional distress to another." (Citations omitted.)); *Cross v. Bonded Adjustment Bureau,* 48 Cal.App.4th 266, 283, 55 Cal.Rptr.2d 801 (1996) ("The elements of a cause of action for intentional infliction of emotional distress are (1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering, and (4) actual and proximate causation of the emotional distress[.]" (Citations omitted.)); *Molko v. Holy Spirit Ass'n for the Unification of World Christianity,* 46 Cal.3d 1092, 252 Cal.Rptr. 122, 762 P.2d 46, 61 (1989) (the elements of intentional infliction of emotion distress are "1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering, and (4) actual and proximate causation of the emotional distress").

## VIII.

On the foregoing grounds, we affirm the March 2, 1999 final judgment in favor of Defendants and against Plaintiff. Our disposition makes it unnecessary to consider the remaining contentions raised by the parties.

Opinion of HIFO, J., Concurring as to Part VI and Joining In All Other Parts.

I concur in the result reached as to Part VI regarding intentional infliction of emotional distress. The trial judge did not err in dismissing the claim because, as was argued by Defendant below, the facts relied upon by Plaintiff did not as a matter of law reach the requirement of "outrageous conduct". This requirement is the same in both the Restatement (Second) of Torts and previous Hawai'i decisional law. Thus, the trial court's decision should be affirmed, even though it was based on a different and incorrect reason.

That notwithstanding, I join in Part VII because it is useful to clarify the elements of the tort of intentional infliction of emotional distress to guide trial courts and future litigants. Adoption of the Restatement's formulation provides such clarification. It also creates greater symmetry as between the separate torts of intentional and negligent infliction of emotional distress, not requiring proof of physical injury where the tortious act was outrageously intentional or reckless.

I also join in Parts I, II, III, IV, V, and VIII.

Concurring Opinion by LEVINSON, J.

I concur in the results reached in Parts IV and V of the majority opinion, although I do not necessarily subscribe to the opinion's reasoning. I join in Parts VI, VII, and VIII of the majority opinion.

Concurring and Dissenting Opinion by MOON, C.J., in which NAKAYAMA, J., joins.

Although I agree with the majority's resolution of plaintiff-appellant Anna Hac's claims, I disagree with its decision to, sua sponte, alter the elements of the tort of intentional infliction of emotional distress inasmuch as the issue is neither raised by the parties nor presented by the present appeal.

This court has previously stated:

Prudential rules of judicial self-governance properly limit the role of the courts in a democratic society. *Cf. Trustees of OHA v. Yamasaki,* 69 Haw. 154, 171, 737 P.2d 446, 456 (1987); *Life of the Land v. Land Use Commission,* 63 Haw. 166, 172, 623 P.2d 431, 438 (1981) (citing *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). One such prudential rule is that "the use of judicial power to resolve public disputes ... should be limited to those questions capable of judicial resolution and presented in an adversary context." *Yamasaki,* 69 Haw. at 171, 737 P.2d at 456 (citation omitted). Another such rule is that, "even in the absence of constitutional restrictions, [courts] must still carefully weigh the wisdom, efficacy, and timeliness of an exercise of their power before acting, especially where there may be an intrusion into areas committed

to other branches of government." *Id.* [ (emphasis in original omitted) ] (citation omitted). Although, generally, issues concerning prudential rules of self-governance arise in cases where justiciability is at issue, self-governance and the proper role of the courts preclude this court not only from considering a case, but also from considering any issue that is not properly before it. *We do not have the prerogative ... to discharge ... our individual judicial obligations in our written opinion[s], ... where the case on appeal does not bring the issue squarely before this court. To refrain from doing so represents an exercise in judicial self-restraint,* not a shirking of judicial responsibility.

James Madison, speaking on the notion of checks and balances in a democratic society, wrote that, "[i]n framing a government which is to be administered by [the people] over [the people], the great difficulty lies in this: You must first enable the government to controul [sic] the governed; and in the next place, oblige it to controul itself." The Federalist Papers No. 51 (J. Madison). Although judicial review serves as a check on the unconstitutional exercise of power by the executive and legislative branches of government, *"the only check upon [the judicial branch's] exercise of power is [its] own sense of self-restraint." U.S. v. Butler,* 297 U.S. 1, 78–79, 56 S.Ct. 312, 80 L.Ed. 477 (1936) (Stone, J., dissenting). *For that reason, alone, judicial self-restraint is surely an implied, if not an expressed, condition of the grant of authority of judicial review.*

*In re Attorney's Fees of Mohr,* 97 Hawai'i 1, 9–10, 32 P.3d 647, 655–56 (2001) (emphases added) (some internal quotation marks omitted) (some ellipsis points added).

In the present case, the majority recognizes that neither party advocates changing established precedent and observes that "the parties cited to our jurisdiction's present formulation of the elements of the tort of intentional infliction of emotional distress[.]" Majority Opinion at 105, 73 P.3d at 59. Given the absence of any argument by the parties, the majority's decision to refashion the elements of intentional infliction of emotional distress evinces a lack of judicial restraint. I, therefore, respectfully dissent.