Glenn R. MACHADO, Plaintiff,

v.

INTERNATIONAL ASSOCIATION OF HEAT & FROST INSULATORS & ASBESTOS WORKERS (AFL–CIO); and International Association of Heat & Frost Insulators & Asbestos Workers (AFL–CIO) Local 132; Acutron Inc.; Leonard Sebresos in His Individual Capacity; John Does 1–10; Doe Entities 1–10, Defendants.

No. CV 05–00576 DAE–KSC.

United States District Court, D. Hawai'i.

Aug. 21, 2006.

Jerry I. Wilson, Honolulu, HI, for Plaintiff.

Michael F. Nauyokas, Lynne T. Toyofuku, Jennifer K. Murata, Marr Hipp Jones & Wang LLP, Honolulu, HI, for Defendants.

*ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ACUTRON'S MOTION FOR JUDGMENT ON THE PLEADINGS; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS LOCAL 132 AND SEBRESOS' MOTION TO DISMISS AS TO COUNT IV*

DAVID ALAN EZRA, District Judge.

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for disposition without a hearing. After reviewing the

motions,[1] the Court GRANTS in part, and DENIES in part, Defendant Acutron Inc.'s ("Acutron") Motion for Judgment on the Pleadings as to Count V and for Partial Judgment on the Pleadings as to Count II, and Defendants International Association of Heat and Frost Insulators and Asbestos Workers, Local 132 ("Local 132") and Leonard Sebresos' ("Sebresos") Motion to Dismiss Count IV.

## BACKGROUND

In June 1996, Acutron, an insulation company, hired Plaintiff as a warehouse worker. Plaintiff resigned in August 1996. In July 2001, Sebresos, in his capacity as coordinator for the Joint Apprenticeship Training Committee ("JATC") for Local 132, asked Plaintiff to return to Acutron as a pre-apprentice. Plaintiff accepted the position and was hired in August 2001. Upon resuming employment with Acutron, Plaintiff became a member of the International Association of Heat & Asbestos Workers (AFL–CIO) and Defendant Local 132. At his one year probation, in September 2002, Plaintiff obtained indentured status as an apprentice after an interview and evaluation by the JATC. Subsequently, Plaintiff alleges that he regularly received successful work evaluations and pay raises.

In April 2003, at a monthly general union meeting, Plaintiff raised various violations by Joseph Villamor ("Villamor") of Defendant Local 132's Apprenticeship Standards for the Heat & Frost Asbestos Insulator Trade ("Apprenticeship Standards"). Specifically, Plaintiff stated that Villamor did not qualify as a pre-apprentice because he had not completed his 12th grade educational requirements, had not passed the requisite Specific Aptitude Test Battery, and had falsely reported a grade he received at Honolulu Community College. Plaintiff asserted that despite these violations, Sebresos exempted Villamor from the Apprenticeship Standards because Villamor was a "knife man" for Sebresos' illegal chicken fighting enterprise. Plaintiff claims that Sebresos responded to this incident by stating that "we can look in your folder too."

Subsequent to the April 2003 meeting, Plaintiff alleges that Sebresos undertook a number of actions in retaliation for Plaintiff's comments. On June 4, 2003, during his annual evaluation meeting with the JATC, Plaintiff asserts that he was wrongfully issued a "strike 1" for submitting unsigned work progress reports.[2] Several days later, Plaintiff claims that he received a letter from Acutron issuing a "strike 2" for his statements during a general union meeting in which he criticized the issuance of the "strike 1." On September 4, 2003, Plaintiff received an unsigned termination letter from Sebresos and Local 132. This letter notified Plaintiff that his apprenticeship agreement was canceled, effective September 8, 2003. Subsequently, Plaintiff appealed this decision, which was denied by a letter on October 2, 2003. Plaintiff then filed a complaint with

---

1. On November 4, 2005, Defendant International Association of Heat and Frost Insulators and Asbestos Workers ("International") filed its Motion to Dismiss. On March 3, 2006, Defendants Local 132 and Sebresos joined International's motion as to Count IV of the Complaint. On June 30, 2006, the Plaintiff filed a Notice of Dismissal of Defendant International. On the same day, the Court terminated International as a party, and International subsequently withdrew its Motion to Dismiss. However, to the extent International's now defunct motion remains relevant to this action on the basis of Local 132 and Sebresos' joinder, the Court will consider the arguments contained therein.

2. Plaintiff alleges that issuance of strike 1 violated Plaintiff's rights because: (1) he was "verbally counseled" by Defendant Acutron's Vice President, therefore it constituted double jeopardy; and (2) Plaintiff should have been notified in writing that the meeting was for disciplinary purposes.

the National Labor Relations Board (NLRB), and on October 31, 2003, the parties reached a settlement agreement whereby Plaintiff was reinstated and awarded backpay and benefits.

Upon returning to work, Plaintiff alleges that Sebresos and other Acutron employees continued their pattern of retaliatory actions toward him. On January 2, 2004, Plaintiff asserts that he was improperly reprimanded for failing to have a safety harness despite the fact that a supervisor told him that one was not necessary. On January 27, 2004, Plaintiff received a letter summoning him to a JATC meeting for "failure to have proper safety equipment on the job site." In a letter dated March 29, 2004, Plaintiff alleges that he was falsely accused of (1) leaving work without permission, and (2) working unsafely with a ladder.

In the interim, on February 13, 2005, Plaintiff alleges that Sebresos filed a false police report accusing Plaintiff of assaulting and robbing him at an illegal cockfight. On February 16, 2005, at a monthly general union meeting, Sebresos repeated the accusations in front of approximately twenty union members, and later, on March 16, 2005, announced that he filed for a temporary retraining order ("TRO") against Plaintiff.

On March 29, 2005, Plaintiff received a letter notifying him that his apprenticeship agreement had been recommended for cancellation. Subsequently, Plaintiff's attorney sent Defendants a notice of appeal. At a meeting held on April 3, 2005,[3] Plaintiff's apprenticeship agreement was officially cancelled, thereby terminating his employment with Acutron. Plaintiff then filed a second complaint with the NLRB for unlawful discrimination and retaliation. In a letter dated June 28, 2005, the NLRB,

informed Plaintiff that Defendants had "reconsidered recommending the termination" of his apprenticeship agreement, and Plaintiff was subsequently reinstated.

On July 21, 2005, Plaintiff received a letter from Sebresos informing him that charges had been filed against him under the "Constitution," and a trial was scheduled for August 3, 2005. The letter failed to specify the specific charges against Plaintiff. By letters dated letters dated July 26 and August 1, 2005, Sebresos and Local 132 denied Plaintiff legal representation for the proceeding. During the trial, Plaintiff claims that the only discernible charges were that he was being retaliated against for filing a complaint with the NLRB.

On August 4, 2005, following the conclusion of the trial, Plaintiff received a letter notifying him that the trial board found him guilty. As a result, he was ordered expelled effective August 8, 2005. Plaintiff then filed a third complaint with NLRB against Sebresos. On August 10, 2005, Sebresos sent a letter to Plaintiff reporting that the charges against Plaintiff were "null and void" and reinstated Plaintiff for the third time. However, on the same day, Defendant Local 132 filed charges against Plaintiff for the "alleged physical assault on Sebresos." Prior to the trial, Plaintiff alleges that Sebresos met with Jeffrey Irorita ("Irorita"), a key witness, and instructed him on how to testify, and threatened him with the loss of his job if he failed to follow Sebresos' instructions. After the August 22, 2005 trial, Plaintiff was fired for the fourth time.

Soon thereafter, on September 7, 2005, Plaintiff filed the Complaint in the instant case alleging causes of action for breach of the duty of fair representation against Local 132 and Defendant International; for

---

**3.** Complaint alleges August 3, 2005 as to the date in which Defendants' second firing occurred. (Comp.¶ 44.) However, this appears to be a typographical error and the Court believes that Plaintiff intended to allege that the event occurred on April 3, 2005.

breach of the collective bargaining agreement against Acutron; for defamation against Sebresos; and for intentional infliction of emotional distress and punitive damages as to all Defendants.

On March 3, 2006, Defendants Local 132 and Sebresos filed their Motion to Dismiss Count IV.[4] On May 23, 2006, Defendant Acutron filed its Motion for Judgment on the Pleadings as to Count V and for Partial Judgment of the Pleadings as to Count II. Plaintiff did not oppose these motions.

### STANDARD OF REVIEW

■ A motion for judgment on the pleadings is proper when the motion is made after the pleadings are closed. *E.E.O.C. v. W.H. Braum, Inc.*, 347 F.3d 1192, 1195 (10th Cir.2003). Also, Federal Rules of Civil Procedure Rule 12(h)(2) specifically authorizes use of motion for judgment on the pleadings to raise the defense of failure to state a claim. *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir.1980). "[A] 12(c) motion for judgment on the pleadings is subject to the same standard as a rule 12(b)(6) motion to dismiss." *Alexander v. City of Chicago*, 994 F.2d 333, 335 (7th Cir.1993).

■ Dismissal on the pleadings is proper only if the moving party is clearly entitled to prevail. *Doleman v. Meiji Mutual Life Insurance Co.*, 727 F.2d 1480, 1482 (9th Cir.1984). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir.2005). Review is limited to the contents of the complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir.1994). Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the plaintiff. *Livid Holdings*, 416 F.3d at 946. "However, the court is not required to accept legal conclusions in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir.2004) (quoting *Clegg*, 18 F.3d at 754–55). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.* (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001)). Thus, "conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir.1988).

### DISCUSSION

*I. Statute of Limitations With Regard To Alleged Breaches of the Collective Bargaining Agreement*

Acutron asserts that it is entitled to partial judgment on the pleadings on the basis that even assuming *arguendo* that Plaintiff has a viable claim against it for breach of the collective bargaining agreement, any claim arising from incidents occurring prior to March 7, 2005 are time-barred as a matter of law because they fall outside of the established six-month statute of limitations. The Court agrees.

■ In *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Supreme Court held that the six-month statute of limitations in the National Labor Relations Act ("NLRA") § 10(b)[5] is also applicable to

---

**4.** On February 23, 2006, Acutron filed a joinder to Defendant International's motion.

**5.** Section 10(b) of the NLRA states in pertinent part:

> [t]hat no complaint shall issue based upon any unfair labor practice occurring more

Section 301 hybrid claims[6]. The Court observed that

> [i]n § 10(b) of the NLRA, Congress established a limitations period attuned to what it viewed as the proper balance between the national interests in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective-bargaining system.

*DelCostello,* 462 U.S. at 171, 103 S.Ct. 2281 (citations omitted). Generally, under Section 301, the statute of limitations begins to run "when an employee knows or should know of the alleged breach of duty of fair representation by a union." *Galindo v. Stoody Co.,* 793 F.2d 1502, 1509 (9th Cir. 1986). However, the application of this rule depends on the particular context in which the claim arose.

In certain situations the Court will toll the time in which the statute of limitations begins to run. *See, e.g., Harper v. San Diego Transit Corp.,* 764 F.2d 663 (9th Cir.1985) (statute of limitations began to run the day that the plaintiff received the union's letter that it would not pursue arbitration of his discharge); *Zuniga v. United Can Co.,* 812 F.2d 443 (9th Cir.1987) (tolled until the date when union representative notified him that union would not further pursue the plaintiff's grievance); *Beck v. Caterpillar,* 50 F.3d 405 (7th Cir.1995) (statute of limitations began to run when a final decision on plaintiff's grievance has been made or from the time a plaintiff discovers, or in the exercise of reasonable diligence should

have discovered, that no further action would be taken on his grievance); *Samples v. Ryder Truck Lines, Inc.,* 755 F.2d 881 (11th Cir.1985) (time began to run when the union's time for asserting a claim against the employer had run out); *But see, Pejic v. Hughes Helicopters, Inc.,* 840 F.2d 667 (9th Cir.1988) (statute of limitations not equitably tolled when the employee files an unfair labor charge with the NLRB). It is noteworthy that under Section 301, "continuing violations" do not toll the statute of limitations. *Harper v. San Diego Transit Corp.,* 764 F.2d 663, 669 (9th Cir.1985).

In the instant case, Plaintiff has failed to provide any basis why equitable tolling of the statute of limitations is applicable. The filing of charges with the NLRB does not toll the statute of limitations because such filing is merely optional. *Conley,* 810 F.2d at 916. Furthermore, Plaintiff does not allege any events that precluded him from filing charges with regards to Defendants' actions. Rather, the Complaint indicates that he was fired and subsequently reinstated on several occasions before final termination on August 22, 2005. Therefore, it is likely that Plaintiff purposely declined to bring an earlier suit since Defendants reinstated him after each of the alleged improper terminations.

Accordingly, this Court finds that the six-month statute of limitation is applicable to Plaintiff's claims, and therefore Plaintiff may not recover for breach of the collec-

---

than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made, unless the person aggrieved thereby was prevented from filing such charge by reason of service in the armed forces, in which event the six-month period shall be computed from the day of his discharge.

29 U.S.C. § 160(b).

**6.** "A 'hybrid' action under § 301 of the Labor Management Relations Act ... is one in which a union member sues his or her employer for breach of its contractual obligations under a collective bargaining agreement and the union for breach of its duty of fair representation." 194 ALR Fed. 1, § 2[a].

tive bargaining agreement for incidents occurring prior to March 7, 2005.

## II. Plaintiff's Claim for Intentional Infliction of Emotional Distress

■■■■ Under Hawaii law, a party must establish four elements in order to make a *prima facie* claim of intentional infliction of emotional distress: "(1) that the conduct allegedly causing the harm was intentional or reckless, (2) that the conduct was outrageous, and (3) that the conduct caused (4) extreme emotional distress to another." *Nagata v. Quest Diagnostics Inc.*, 303 F.Supp.2d 1121, 1125–1126 (D.Haw.2004). "Recklessness requires that defendant must know, or have reason to know, the facts which create the risk." *Nelsen v. Research Corp. of the Univ.*, 805 F.Supp. 837, 851–52 (D.Haw. 1992) (citing Restatement, Torts, 2d § 500, comment a). The Restatement provides guidance in defining "outrageous" conduct:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46 cmt. d (1965). Courts must make a threshold examination as to whether the acts as alleged by a plaintiff are sufficiently outrageous to form the basis for a claim of intentional infliction of emotional distress.

*See Shoppe v. Gucci America, Inc.*, 94 Hawai'i 368, 14 P.3d 1049, 1068 (2000). However, where reasonable persons could differ, the question should be left to the jury. *Id.*

### A. Plaintiff Has Alleged Sufficient Facts Against Sebresos

■■■ Plaintiff alleges that Sebresos "made a false report defaming and accusing Plaintiff of assaulting and robbing him at an illegal cockfight ..." (Comp.¶ 37, p. 15.) Further, Plaintiff alleges that Sebresos announced these false accusations at a general union meeting. (*Id.* ¶ 38, p. 15–16.) Assuming the truth of these allegations, a finder of fact could reasonably determine that these actions constitute outrageous and reckless conduct and as a result, Plaintiff suffered extreme emotional distress. Consequently, the Court holds that Plaintiff has stated sufficient facts to support a claim of intentional infliction of emotional distress with respect to Sebresos.

### B. Plaintiff Has Failed to Allege Sufficient Facts against Defendants Local 132 and Acutron

■■■ Even construing the Complaint in a light most favorable to Plaintiff, the Court cannot ascertain any unique facts or circumstances that would support Plaintiff's claims for intentional infliction of emotional distress against Local 132 and Acutron. Plaintiff alleges only that Local 132 violated a number of provisions of the collective bargaining agreement and engaged improper behavior along with Acutron to remove Plaintiff from his job. While these actions certainly may form the basis for Plaintiff's other claims, they do not arise to the level of outrageous behavior necessary to predicate a claim for intentional infliction of emotional distress.

*C. Section 301 Preemption of Intentional Infliction of Emotional Distress*

Local 132 and Sebresos contend that Plaintiff's claim for intentional infliction of emotional distress is preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). Generally, Section 301 of the Labor Management Relations Act, is a jurisdictional statute in which "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). Section 301 has been interpreted as authorizing "federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements." *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 451, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). "[T]he preemption rule has been applied only to assure that the purposes of animating § 301 will be frustrated neither by state laws purporting to determine 'questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement. . . .' " *Livadas v. Bradshaw,* 512 U.S. 107, 122–24, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994). The primary concern is maintaining uniformity in labor disputes involving collective bargaining, and ensuring that such uniformity be driven by federal labor policy. *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

In *Allis–Chalmers Corp. v. Lueck,* the Court extended the Section 301 preemption doctrine to state tort claims. 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). Specifically the Court held that when a tort law is at issue, the analysis should focus on whether the "tort claim is inextricably intertwined with consideration of the terms of the labor contract. If the state tort law purports to define the meaning of the contract relationship, that law is preempted." *Id.* at 213, 105 S.Ct. 1904.

Section 301 preemption of state law is "an inexact concept, turning on the specific facts of each case. . . ." *Cramer v. Consolidated Freightways, Inc.,* 255 F.3d 683, 692 (9th Cir.2001). "The plaintiff's claim is the touchstone for analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim. If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." *Id.* at 691.

In the instant case, Defendant Sebresos' false accusations against Plaintiff are both unrelated to the CBA and is in itself the basis for the intentional infliction of emotional distress claim. *See Chung v. McCabe Hamilton & Renny Co., Ltd.,* 109 Hawai'i 520, 128 P.3d 833, 846 (2006) (holding that a tort claim based on outrageous conduct may survive preemption where the conduct is either (1) unrelated to governed labor practices, or (2) accomplished in such an abusive manner that the manner itself becomes the basis for the claim).

Accordingly, this Court finds that Plaintiff's intentional infliction of emotional distress claim against Sebresos is not preempted by Section 301.

*III. Punitive or Exemplary Damages*

In Plaintiff's claim for punitive damages, he simply realleges his previous allegations without specifying which causes of action form the basis for such damages. Therefore, this Court addresses each of Plaintiff's claims and whether they may predicate a request for punitive damages.

### A. Section 301 Does Not Provide For an Award of Punitive Damages

██ Generally, punitive damages are not allowed in breach of contract actions brought under section 301. *Moore v. Local Union 569 of the Int'l Bhd. Of Electrical Workers,* 989 F.2d 1534, 1542 (9th Cir. 1993). "It is the general policy of the federal labor laws, to which the federal courts are to look for guidance in Section 301 actions, to supply remedies rather than punishments." *Local 127, United Shoe Workers of America v. Brooks Shoe Manufacturing Co.,* 298 F.2d 277, 284 (3rd Cir.1962). In very limited circumstances a court *may* award punitive damages under Section 301. *Bower v. Bunker Hill Co.,* 675 F.Supp. 1254, 1259 (E.D.Wash.1986) ("an award of punitive damages would be appropriate when it would have the effect of changing a specific pattern of illegal conduct by a party because under those circumstances, the award would be remedial and serve to cure a specific problem."). Plaintiff does not allege a specific pattern of illegal conduct that would be remedied or any other unique circumstances that would support an award of punitive damages. Therefore, the Court finds that Plaintiff may not recover punitive damages for his claims of breach of the collective bargaining agreement and duty of fair representation.

### B. Defamation

██ In *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 760–761, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985), the Supreme Court acknowledged that "courts for centuries have allowed juries to presume that some damage occurred from many defamatory utterances and publication." Where only private speech is implicated, the Court held "the state interest adequately supports awards of presumed and punitive damages-even absent a showing of 'actual malice.'" *Id.* at 761, 105 S.Ct. 2939.

The Court does not address the sufficiency of Plaintiff's defamation claims. However, as a matter of law, the Court finds that Plaintiff may recover punitive damages if he succeeds on his defamation claim. Accordingly, the Court DENIES Defendants' request to dismiss Plaintiff's claim for punitive damages with respect to his claim for defamation against Sebresos.

### C. Intentional Infliction of Emotional Distress

 Hawaii law, punitive damages are well-established in traditional tort actions. *Masaki v. General Motors Co.,* 71 Haw. 1, 780 P.2d 566, 571 (1989) ("the punitive damages doctrine has remained firmly established in the common law"). "[T]he doctrine of punitive damages survives because it continues to serve the useful purposes of expressing society's disapproval of intolerable conduct and deterring such conduct where no other remedy would suffice." Mallor & Roberts, *Punitive Damages: Toward a Principled Approach,* 31 Hastings L.J. 639, 641 (1980). As the Court finds that Plaintiff has stated a viable claim for intentional infliction of emotional distress with respect to Sebresos, he may also maintain a prayer for punitive damages in the event he succeeds on this cause of action.

### CONCLUSION

For the reasons stated above, the Court GRANTS in part, and DENIES in part, Acutron Inc's Motion for Judgment on the Pleadings as to Count V and for Partial Judgment on the Pleadings as to Count II, and Local 132 and Leonard Sebresos' Motion to Dismiss Count IV.

IT IS SO ORDERED.